UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| WILLIE THURMOND and DAVID THOMAS, Individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>PRESIDENTIAL LIMOUSINE, PRESIDENTIAL LIMOUSINE, A Nevada Corporation, PRESIDENTIAL LIMOUSINE CONCIERGE SERVICE, INC., and BRENT J. BELL<br><br>Defendants. | Case No. 2:15-cv-01066-MMD-PAL<br><br>ORDER |

**I.    SUMMARY**

Plaintiffs are former or current limousine drivers who worked for Defendants at some point between 2011 and 2016. (Dkt. no. 1-2 at 9.) They assert, among other claims, that Defendants failed to provide them with minimum wages throughout that period in violation of the Nevada Constitution. (*Id.* at 11-14.) Defendants filed both a Motion to Dismiss ("MTD") (dkt. no. 8) and a Motion for Partial Summary Judgment ("MPSJ") (dkt. no. 14), seeking dismissal on several grounds. After hearing oral argument on both motions on January 27, 2016, the Court granted the motions in part and denied them in part, reserving one issue in the MTD and the MPSJ for this Order.[1]

---

[1] The Court additionally deferred ruling on a statute of limitations issue that the Nevada Supreme Court is currently considering in *Williams v. Eighth Judicial District Court*, No. 66629 (Nev. filed Oct. 6, 2014). The *Williams* matter queries which statute of limitations should apply to a minimum wage claim under the Nevada Constitution, an issue that the parties dispute here. The case was submitted to Nevada Supreme Court for en banc consideration on October 6, 2015, and a ruling on the statute of limitations issue appears to be imminent.

(Dkt. no. 55.) The sole remaining issue is whether the Court should dismiss the portions of Plaintiffs' minimum wage claims that accrued before the Nevada Supreme Court's decision in *Thomas v. Nevada Yellow Cab Corp.*, 327 P.3d 518 (Nev. 2014).[2] Based on the parties' response briefs (dkt. nos. 15, 23), reply briefs (dkt. nos. 28, 29), and oral argument, the Court finds that dismissal of minimum wage claims predating *Yellow Cab* is not warranted. The MTD (dkt. no. 8) and the MPSJ (dkt. no. 14) are therefore denied with respect to this single remaining issue.

## II.   BACKGROUND

In 2009, Defendant Presidential Limousine became a party to a different case in this district that involved similar allegations of unpaid minimum wages by former limousine drivers. *See Lucas v. Bell Trans*, No. 2:08-cv-01792-RCJ, 2009 WL 2424557, at *5-8, 10 (D. Nev. June 24, 2009) (adding Presidential Limousine as a party pursuant to the plaintiffs' motion to amend).[3] There, the plaintiffs argued that a 2006 amendment to the Nevada Constitution (the "Minimum Wage Amendment") entitled them to minimum wages under Nevada law. *Id.* at *5-8. The defendants countered that limousine drivers were not covered by the Minimum Wage Amendment because they had been categorically excluded from minimum wage benefits under a Nevada statute that predated the Amendment. *See id.* at *5 (discussing NRS § 608.250(2)(e)). The defendants urged the court to read the constitutional amendment — which broadly defines an "employee" as "any person who is employed by an employer," except for individuals who are under 18, employed as short-term trainees, or "employed by a nonprofit organization for after school or summer employment," Nev. Const. art. 15, § 16

---

[2] Defendants raised the retroactivity issue in both the MTD and the MPSJ. (*See* dkt. no. 8 at 9-14; dkt. no. 14 at 10-17.) Because Defendants have presented facts outside the pleadings in support of their MPSJ, the Court will address the MPSJ in lieu of the MTD. *See* Fed. R. Civ. P. 12(d) (requiring a Rule 12(b)(6) motion to be converted into a summary judgment motion if "matters outside the pleadings are presented to and not excluded by the court"). The reasoning discussed here also applies to the MTD.

[3] This case was later assigned to a different district judge. Its updated case number is 2:08-cv-01792-JAD. For clarity, the Court will reference the case number that applied when the dismissal order was issued in June 2009.

— as importing the exclusions listed in NRS § 608.250. *See* Defs.' Mot. Dismiss at 3, *Lucas v. Bell Trans*, No. 2:08-cv-01792-RCJ (D. Nev. Jan. 20, 2009), Dkt. no. 4; Defs.' Reply at 6-8, *Lucas*, No. 2:08-cv-01792-RCJ (Feb. 20, 2009), Dkt. no. 7.

The *Lucas* court agreed with the defendants, reasoning that the Minimum Wage Amendment "happily co-exist[s]" with the exclusions listed in NRS § 608.250. *Lucas*, 2009 WL 2424557, at *7. Under that logic, the plaintiffs could not make out a claim for unpaid minimum wages for their work as limousine drivers under Nevada law. The court accordingly dismissed the plaintiffs' state-law minimum wage allegations. *Id.* at *8. The plaintiffs had alleged several other wage-related claims, including unpaid minimum wages under federal law and unpaid overtime. *See* Compl. at 11-14, No. 2:08-cv-01792-RCJ (Dec. 18, 2008), Dkt. no. 1. The litigation continued for several years after the Nevada minimum wage claims were dismissed. The parties settled the case in June 2014 with an agreement that covered claims arising between December 2005 and January 1, 2011. Final J., No. 2:08-cv-1792-JAD (June 18, 2014), Dkt. no. 262; Settlement Agreement, No. 2:08-cv-1792-JAD (June 8, 2014), Dkt. no. 260-1.

About a week after the settlement's approval, in *Thomas v. Nevada Yellow Cab Corp.*, 327 P.3d 518 (Nev. 2014), the Nevada Supreme Court ruled that the Minimum Wage Amendment extends to taxicab and limousine drivers. Defendants assert that they modified their payment practices "[a]lmost immediately" after the decision was rendered. (Dkt. no. 14-1 at 4.) Defendants had already modified their payment practices once before: as of January 1, 2011, Defendants implemented a payment system that, they argue, complied with federal minimum wage requirements. (*Id.* at 3-4.) Defendants began tracking their drivers' daily tip earnings and supplementing any tips to ensure that the driver earned the federal minimum wage. (*Id.* at 4.) Defendants concede that the 2011 payment modifications did not comply with Nevada's minimum wage requirements because the system allowed tips to count toward the drivers' minimum wage threshold. (Dkt. no. 14 at 6-7.)

///

Plaintiffs initiated this lawsuit in Nevada state court on April 22, 2015. (Dkt. no. 1-2.) Defendants removed to this Court in June 2015; they filed the MPSJ about three weeks later. (Dkt. no. 14.)

## III.   LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250–51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements,

the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am. NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

## IV.   ANALYSIS

Defendants assert that they were entitled to rely on a favorable ruling in *Lucas*, 2009 WL 2424557, at *5-8, which held that limousine drivers were not entitled to a minimum wage under Nevada law. (*See* dkt. no. 14 at 10-17.) In light of that decision, they argue that it would be unfair to hold them accountable for their failure to pay Nevada minimum wages to their limousine drivers between 2011 and 2014, when the *Yellow Cab* decision was issued. (*See id.* at 11-14.) They ask the Court to use a multi-factor test to determine whether to apply *Yellow Cab* retroactively to that period. (*Id.* at 10 (citing *Breithaupt v. USAA Prop. & Cas. Ins. Co.*, 867 P.2d 402, 405 (Nev. 1994) (per curiam)).)

By contrast, Plaintiffs argue that the *Breithaupt* test is misplaced. (Dkt. no. 23 at 5.) Instead, they contend that the Minimum Wage Amendment was unquestionably effective years before either the *Lucas* or the *Yellow Cab* decision, such that the Court need not determine whether to apply *Yellow Cab* retroactively. (*See id.* at 5-12.) The Court agrees with Plaintiffs.

### A.   *Breithaupt* Factors

As an initial matter, it is not clear to the Court that the *Breithaupt* factors must be applied to this case. There, the Nevada Supreme Court refused to apply a statutory amendment retroactively because it would have been inequitable to the insurance

5

companies governed by the statute. 867 P.2d at 405-06. The amendment affected a statute regulating uninsured motorist insurance; the legislature amended the statute in response to a different Nevada Supreme Court decision that had interpreted the pre-amendment statute. *Id.* at 404-05. The plaintiff argued that notice requirements in the amended statute should have applied to her insurance policy, which predated the amendment by several years. *See id.* She also asked the court to overrule the earlier Nevada Supreme Court decision because the amendment suggested that the earlier decision was improperly decided. *Id.* at 405. She urged the court to apply this overruling retroactively. *Id.*

Noting that "[t]he overruling of a judicial construction of a statute generally will not be given retroactive effect," *id.* at 406, the court applied a three-prong test to determine whether to deviate from the general rule. First, "the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed." *Id.* at 405 (quoting *Chevron Oil v. Huson*, 404 U.S. 97, 106-07 (1971), *abrogated by Harper v. Va. Dep't of Taxation*, 509 U.S. 86 (1993)). Second, courts "must weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Id.* (quoting *Chevron Oil*, 404 U.S. at 106-07). Finally, courts balance the equities to determine if retroactive application "could produce substantial inequitable results." *Id.* (quoting *Chevron Oil*, 404 U.S. at 106-07). Applying these factors, the Nevada Supreme Court found that insurers would be unduly harmed by retrospective application of the amended statute because they could not "comply retroactively with a new and more demanding standard of notice." *Id.* at 406. Nor would retrospective application promote the purpose of the amendment, which was designed to give consumers notice of their rights to purchase certain insurance plans. *Id.*

During oral argument in this case, Defendants acknowledged that *Breithaupt* is not directly on point here. First, the *Breithaupt* case involved competing interpretations of

6

an insurance statute by the Nevada Supreme Court and the state legislature, *see id.* at 405-06, whereas the *Lucas* decision — a federal district court decision that interprets the Nevada Constitution — was not issued by "the final authority on [Nevada] law." *Fid. Union Tr. Co. v. Field*, 311 U.S. 169, 177 (1940). Although that authority rests with the Nevada Supreme Court, *see id.*, Defendants argue that the *Lucas* court's dismissal of the Nevada minimum wage claims was a binding judgment on which they were entitled to rely because Presidential Limousine was a party in that case. (*See* dkt. no. 29 at 7-8.) Even so, they fail to offer authority supporting the position that the later-issued *Yellow Cab* decision should not apply to behavior that occurred after the time period at issue in *Lucas*, which covered claims accruing as of January 1, 2011.[4] Here, Plaintiffs' minimum wage claims accrued on or after January 2, 2011. (*See* dkt. no. 1-2 at 9.)

A second, and more important, difference between this case and *Breithaupt* is the timing of the change in the law. There, the insurance statute was amended after the plaintiff had purchased the underlying policy, but the Minimum Wage Amendment at issue here was in effect several years before January 2, 2011, when the earliest claims in this case arose. *See Breithaupt*, 867 P.2d at 404-05; *Yellow Cab*, 327 P.3d at 520 (explaining that the Minimum Wage Amendment became effective in 2006). And the Nevada Supreme Court has explicitly held that the 2006 Minimum Wage Amendment "supersedes and supplants the taxicab driver exception set out in NRS § 608.250(2)." *Yellow Cab*, 327 P.3d at 522. This holding suggests that Nevada's minimum wage protections covered taxicab and limousine drivers beginning in 2006. *See Greene v. Exec. Coach & Carriage*, 591 F. App'x 550, 550 (9th Cir. 2015) (unpublished memorandum decision) (citing this passage from *Yellow Cab* in rejecting a similar

///
///

---

[4] To be fair, Defendants indicated that they could not find any case that addressed the scenario presented here — where a party to an earlier federal district court case allegedly relied on that court's decision to avoid paying minimum wages under state law, and began paying those wages only after the Nevada Supreme Court reached a different conclusion on the same legal question.

7

retroactivity argument "[b]ecause the repeal of § 608.250(2) occurred in 2006 when the amendment was ratified").

Defendants nevertheless insist that the three-prong analysis should be applied to this case, focusing primarily on the third prong, which requires the Court to balance the equities of retroactive application. Defendants' arguments are misplaced.

### B. Inequitable Results

Defendants have not demonstrated that retroactively applying *Yellow Cab* "could produce substantial inequitable results." *Breithaupt*, 867 P.2d at 405. They argue that retroactively applying *Yellow Cab* would be inequitable because Presidential Limousine relied on the *Lucas* decision — which was effectively abrogated by *Yellow Cab* — as a party to that case. (*See* dkt. no. 14 at 11-14.) As proof of their reliance, Defendants point to a change to their payment system that occurred after the *Lucas* court dismissed the plaintiffs' Nevada minimum wage claims. (*Id.* at 6.) However, Defendants' claim of reliance rings hollow because they did not change their payment system after the *Lucas* decision — they did not comply with the Minimum Wage Amendment before the *Lucas* decision was issued and continued the same practice after the decision was rendered. Defendants assert that they began complying with federal — but not Nevada's — minimum wage laws as of January 1, 2011. (*Id.*) Defendants suggest that their payment practices would have changed to comply with Nevada law had the *Lucas* court not dismissed the Nevada minimum wage claims. (*See id.*) The problem with this argument is that Defendants were unharmed by relying on their favorable outcome in *Lucas* — they were able to continue avoiding their obligation to pay their limousine drivers the Nevada minimum wage. Although Defendants changed their payment practices after *Lucas*, they failed to pay Nevada minimum wages both before and after that decision. Thus, if *Yellow Cab* does not apply retroactively, any inequitable results would affect Defendants' limousine drivers, who would be foreclosed from seeking minimum wages that they could have accessed after the Minimum Wage Amendment's 2006 implementation.

Defendants further assert that retroactively applying *Yellow Cab* would produce inequitable results because Defendants relied on the *Lucas* court's dismissal of the Nevada minimum wage claims in settling that case.[5] (*See id.* at 6-7, 13.) The settlement agreement covered claims that accrued between December 2005 and January 1, 2011. Settlement Agreement at 5, *Lucas*, No. 2:08-cv-1792-JAD (June 8, 2014), Dkt. no. 260-1. The January 1, 2011, end date reflects the date on which Presidential Limousine implemented its modified payment practices to comply with federal minimum wage requirements. (Dkt. no. 14 at 13.) Because the *Lucas* court had extinguished the plaintiff's Nevada minimum wage claims, Defendants believed that they were in compliance with the applicable minimum wage standards as of January 1, 2011. (*Id.*) Thus, Defendants assert that the parties would not have established that end date (as well as the settlement value) but for the *Lucas* court's dismissal of the Nevada minimum wage claims. (*See id.*)

This argument is tenuous. First, the only minimum wage claim that could have been settled in the *Lucas* matter was the surviving federal minimum wage claim. It was the *Lucas* court's dismissal order — not the settlement agreement — that disposed of the plaintiffs' Nevada minimum wage claims. *See* Settlement Agreement, *Lucas*, No. 2:08-cv-1792-JAD (June 8, 2014), Dkt. no. 260-1. Second, Defendants have not demonstrated how they relied to their detriment on the *Lucas* dismissal order when they agreed to a settlement value. As noted above, Defendants had already obtained a favorable dismissal order that allowed them to continue to avoid paying Nevada minimum wages to their limousine drivers. Indeed, this argument seems to require an examination of the *Lucas* parties' intent in entering the settlement agreement, which

---

[5]This argument could also be construed as a preclusion argument — if the class of plaintiffs involved in the *Lucas* case could have litigated claims arising after January 1, 2011 (the close of the period covered by the settlement agreement), then they should be foreclosed from bringing those claims here. (*See* dkt. no. 14 at 7.) During oral argument, the parties presented cursory arguments about the extent to which Plaintiffs in this case overlap with the *Lucas* plaintiffs, such that preclusion principles might apply here. Because those arguments were cursory and did not appear in the MTD, MPSJ, or the related briefing, the Court will not decide any preclusion issues in this Order.

9

seems inappropriate to determine here. Third, in this case, Plaintiffs' unpaid wage claims began, at their earliest, on January 2, 2011. (*See* dkt. no. 1-2 at 9.) Defendants' reliance argument seems to suggest that the period covered by the *Lucas* settlement should extend into the time period at issue here, which began after the end date in *Lucas*. If the Court refuses to apply the *Yellow Cab* decision retroactively — as Defendants request — then the reach of the *Lucas* settlement would effectively extend to June 2014, when the Nevada Supreme Court issued *Yellow Cab*. *See Yellow Cab*, 327 P.3d at 518. Such a decision would give Defendants a benefit greater than the bargain to which they agreed in the *Lucas* settlement agreement. *See* Settlement Agreement at 5, *Lucas*, No. 2:08-cv-1792-JAD (June 8, 2014), Dkt. no. 260-1 (defining the time period covered by the settlement). This is hardly an inequitable result for Defendants.

Because Defendants have failed to show that *Yellow Cab* should not be applied retroactively, they are not entitled to judgment as a matter of law with regard to Plaintiffs' Nevada minimum wage claims. The Court will therefore deny the MPSJ and the MTD.

**V.      CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion or reconsideration as they do not affect the outcome of the motions.

It is therefore ordered that Defendants' Motion to Dismiss (dkt. no. 8) and Defendants' Motion for Partial Summary Judgment (dkt. no. 14) are denied with regard to the remaining issue of whether to apply *Thomas v. Nevada Yellow Cab Corp.*, 327 P.3d 518 (Nev. 2014), retroactively.

DATED this 17th day of February 2016

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE